UNITED STATES DISTRICT COURT

**FILED**

DISTRICT OF SOUTH DAKOTA

MAR 1 4 2006

WESTERN DIVISION

CLERK

|  |  |  |
|---|---|---|
| BY DEVELOPMENT, INC., | ) | CIV. 04-5116 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
|  | ) |  |
| UNITED FIRE & CASUALTY COMPANY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Pending before the Court is a Motion for Summary Judgment [doc. #22], by the

Defendant, United Fire & Casualty Company, and a Motion for Summary Judgment [doc.

#25], by the Plaintiff, By Development, Inc. All briefing is complete and this matter is ripe for

disposition. For the following reasons, the Court grants the Defendant's Motion for Summary

Judgment and denies the Plaintiff's Motion for Summary Judgment.

### FACTUAL BACKGROUND

The parties filed a Statement of Stipulated Facts [doc. #24], which the Court hereby

incorporates by this reference. The Court will, however, briefly summarize the facts

underlying this lawsuit. The Plaintiff, a South Dakota corporation, does business as

AmericInn and Cadillac Jack's in Deadwood, South Dakota. The Defendant is an Iowa

corporation. The Defendant issued an insurance policy ("the Policy") covering the Plaintiff's

business enterprise in Deadwood. The Policy included "Commercial Property Coverage,"

which included "Business Income Other than Rental Value-with Extra Expense."

After a wildland fire, known as the "Grizzly Gulch" fire, came dangerously close to the City of Deadwood, the Governor of South Dakota gave a verbal order to evacuate Deadwood at 2:30 p.m. on Saturday, June 29, 2002.  The evacuation order, under civil authority, was lifted for Deadwood at 8 p.m. on Monday, July 1, 2002.  Deadwood residents were advised they could return to Deadwood using Highway 85 from the north or south.  Residents of nearby Lead, South Dakota, were under a civil authority evacuation order beginning at 5 p.m. on Monday, July 1, 2002.  The evacuation order for Lead was lifted, with some exceptions, at 6 a.m. on Thursday, July 4, 2002.  At the time the evacuation order was lifted for Deadwood (at 8 p.m. on July 1, 2002) other evacuation orders and road closures remained in effect for areas surrounding Deadwood.  Numerous highways and roads leading to Deadwood remained closed or had only restricted travel as of Monday, July 1, 2002.  Other road restrictions and closures were in effect in and around Lead.  The closures and restrictions gradually were lifted over the next week, and all the road restrictions and closures in the area caused by the Grizzly Gulch fire were lifted by Monday, July 8, 2002, at 6 p.m.  The Statement of Stipulated Facts contains statistics from the South Dakota Department of Transportation regarding average vehicle traffic for the year 2002 for specific road markers around Deadwood.

The Plaintiff's enterprise in Deadwood was closed and evacuated during the Deadwood evacuation order.  The Plaintiff alleges the fire evacuation and road closures and restrictions caused it to have a business income loss, even though the evacuation order for Deadwood had been lifted by July 1, 2002, at 8 p.m.  The Plaintiff claims it incurred substantial business income and other losses during that period, and that, upon opening on July 2, 2002, it

continued to incur business income and other losses due to the Grizzly Gulch fire and the civil

authority orders still in place around Deadwood.

The Policy issued by the Defendant provided insurance coverage for actual loss of

business income sustained by the Plaintiff and necessary extra expense caused by civil

authority orders that prohibited access to the Plaintiff's insured premises.  The Business

Income Coverage provision under the Policy provides as follows:

A.      Coverage . . . .
        3.      Additional Coverages
                b.      **Civil Authority.**  We will pay for the actual loss of
                Business Income you sustain and necessary Extra Expense
                caused by action of civil authority that prohibits access to the
                described premises due to direct physical loss of or damage to
                property, other than at the described premises, caused by or
                resulting from any Covered Cause of Loss.

                The coverage for Business Income will begin 72 hours after the
                time of that action and will apply for a period of up to three
                consecutive weeks after coverage begins. . . .

The Declaration sheet showing coverage for the Plaintiff provides there is "No Ded.," meaning

there is no deductible, for "Business Income Other Than Rental Value-with Extra Expense."

The Plaintiff alleges its estimated damages were $288,204.53.  The Plaintiff submitted

a claim to the Defendant.  On August 30, 2002, the Defendant's claims processor notified the

Plaintiff that the Defendant would not make any payment on claims submitted by the Plaintiff,

because the Plaintiff's property was not closed down for more than seventy-two hours.  The

Plaintiff filed a declaratory judgment action in this Court on December 6, 2004.  In the instant

motions, the parties request the Court declare the parties' responsibilities, obligations, and

rights with regard to the United Fire policy, Policy Number 60-211-637, issued to the Plaintiff.

3

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth *specific* facts showing that a genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The Supreme Court has instructed that summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

4

## DISCUSSION

The interpretation and construction of the terms of an insurance contract are questions of law. Grovenburg v. Homestead Ins. Co., 183 F.3d 883, 885 (8th Cir. 1999). The resolution of the issues presently before the Court are "particularly amenable to summary judgment." Id. Moreover, the lack of any factual disputes in this case renders it additionally capable of resolution at the summary judgment stage. In reaching its conclusion, the Court must rely, when possible, upon South Dakota law. See TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co., 114 F.3d 731, 732 (8th Cir. 1997) (stating the interpretation of an insurance policy is guided by state law).

### A.    Insurance Policy Interpretation

"The goal of contract interpretation is to see that the mutual intent of the parties is carried into effect." Nelson v. Schellpfeffer, 656 N.W.2d 740, 743 (S.D. 2003). Courts must read the insurance policy as a whole in an effort to give effect to each provision, id., and the language of the contract "must be construed according to the plain meaning of its terms," Biegler v. Am. Family Mut. Ins. Co., 621 N.W.2d 592, 598-99 (S.D. 2001). The plain and ordinary meaning of the written document controls unless some ambiguity exists in the terms of the contract. Fox v. Burden, 603 N.W.2d 916, 920 (S.D. 1999). Contract language is given the plain and ordinary meaning a reasonable person would understand. See Finck v. Northwest Sch. Dist. No. 52-3, 417 N.W.2d 875, 877 (S.D. 1988). Therefore, the Court must determine what a reasonable person in the position of the Plaintiff would have understood the terms to mean. See Dairyland Ins. Co. v. Wyant, 474 N.W.2d 514, 518 (S.D. 1991) (Henderson, J., dissenting); Perry v. Farm Mut. Ins. Co. of Idaho, 936 P.2d 1342, 1345 (Idaho Ct. App. 1997).

If the terms of the policy are clear and explicit, and do not lead to an absurd result, the search for common intent ends. Nelson, 656 N.W.2d at 743. However, if doubt or uncertainty exists as to whether the insured's claim is within the coverage afforded by the policy, the uncertainty "must be construed most strongly against the insurer and in favor of the insured." Dairyland Ins. Co. v. Kluckman, 201 N.W.2d 209, 214 (S.D. 1972). Similarly, an ambiguous provision is construed against the insurer as the drafter of the contract. Zochert v. Nat'l Farmers Union Prop. & Cas. Co., 576 N.W.2d 531, 532 (S.D. 1998). "Language in an insurance contract is ambiguous when it is fairly susceptible to two constructions;" however, an "[a]mbiguity will not be created merely by one party offering a different interpretation of the contract language." Gloe v. Union Ins. Co., 694 N.W.2d 252, 260-61 (S.D. 2005) (citation and internal quotation omitted).

**B.    United Fire & Casualty Company Policy Number 60-211-637**

In its motion for summary judgment, the Defendant argues that under the plain language of the Policy, it was not required to pay for losses to the Plaintiff's property until an action of civil authority prohibited access to the premises for longer than seventy-two hours.[1] The Plaintiff, in its motion, contends the Policy language stating there is no deductible nullifies the language providing for the seventy-two hour waiting period (which the Plaintiff claims to be a deductible). Alternatively, the Plaintiff argues there exists a conflict between the two provisions. This conflict, the Plaintiff claims, creates an ambiguity that must be construed in its favor to provide coverage for its losses. Last, the Plaintiff asserts that, even if the waiting

---

[1]Hereafter, for purposes of the instant motions, the Court will refer to this period as the "waiting period."

period is not considered a deductible, access to the Plaintiff's property was prohibited for over seventy-two hours and, thus, it is entitled to coverage for its losses. The intermingled nature of the issues presented permits the Court to address them simultaneously.

The first issue before the Court revolves around interpretation of the phrase, "action of civil authority that prohibits access." Because the South Dakota Supreme Court has yet to interpret such a provision, this Court is tasked with predicting how the South Dakota Supreme Court would rule if presented with this issue. While no courts have interpreted the phrase, "action of civil authority that prohibits access," under South Dakota law, similar language has been interpreted by other courts. In Southern Hospitality, Inc. v. Zurich American Insurance Co., 393 F.3d 1137, 1138-39 (10th Cir. 2004), the United States Court of Appeals for the Tenth Circuit interpreted an identical provision under Oklahoma law. That case involved a denial of insurance claims following the terrorist attacks of September 11, 2001. The losses Southern Hospitality, Inc. ("Southern Hospitality") incurred resulted from hotel cancellations after the Federal Aviation Administration ("FAA") grounded all flights in the United States after the terror attacks. Southern Hospitality filed a claim with Zurich American Insurance Company ("Zurich") for its business income losses under a provision that covered losses "caused by action of civil authority that prohibits access to the described premises." Id. at 1138. Zurich denied the claim, and Southern Hospitality filed a breach of insurance contract claim. The district court granted Zurich's motion for summary judgment, concluding that the policy did not apply to the situation before the court.

On appeal, Southern Hospitality argued the term "prohibits access" should have been "interpreted to provide coverage because it is ambiguous and the acceptable definitions include

meanings that result in coverage." <u>Id.</u> at 1140.  The Tenth Circuit rejected this argument, observing that the "plain and ordinary meaning of 'prohibit' is to 'formally forbid, esp. by authority' or 'prevent.'  'Access' means 'a way of approaching or reaching or entering.'" <u>Id.</u> (quoting Oxford American Dictionary & Language Guide 6, 795 (1999)).  The FAA order, the court noted, prohibited access to flights but did not prohibit access to the hotel's operations. <u>Id.</u>  The court held "the civil authority provision does not apply because the FAA's order grounding flights did not itself prevent, bar, or hinder access to Southern Hospitality's hotels in a manner contemplated by the policies." <u>Id.</u> at 1141.

Similarly, in <u>Abner, Herrman & Brock, Inc. v. Great Northern Insurance Co.</u>, 308 F. Supp. 2d 331, 333 (S.D.N.Y. 2004) ("<u>AHB</u>"), access to the plaintiff's business was prohibited by civil authority after the September 11, 2001, attacks.  The United States District Court for the Southern District of New York held the "civil authority" provision, which covered losses "when a civil authority prohibits access" to the covered premises, was unambiguous and was applicable only to the four days, September 11-14, 2001, when access to the premises was completely prohibited by a civil order.  <u>Id.</u> at 336-37.  The court ruled the coverage did not extend through September 17, 2001, or any later date, "despite any confusion that AHB employees may have had about access to the premises and despite any difficulties AHB's Chairman or his driver may have had in getting around the city.  The record is clear that as of September 17, 2001, no civil authority prohibited access to AHB's premises." <u>Id.</u> at 336.

In the instant case, there is no dispute that the governor's evacuation order for the City of Deadwood on June 29, 2002, qualified as "an action of civil authority."  The issue here is whether that action prohibited access to the Plaintiff's property for longer than the requisite

seventy-two hours, because the Plaintiff is entitled to recover only for losses incurred due to an action of civil authority prohibiting access for longer than that amount of time.  Initially, the Court concludes the South Dakota Supreme Court, if presented with the issue here, would hold that the phrase, "action of civil authority that prohibits access," is not ambiguous.  The action of civil authority prohibiting access to Deadwood lasted for less than fifty-four hours, from 2:30 p.m. on Saturday, June 29, 2002, until 8 p.m. on Monday, July 1, 2002.  Although some road closures around Deadwood continued for some time after that, *access* (under the plain and ordinary meaning of the word) to the Plaintiff's property was not *prohibited* (under the plain and ordinary meaning of the word) by any action of civil authority after 8 p.m. on July 1, 2002.  Access to the Plaintiff's property was not prohibited for the seventy-two hours necessary before coverage under the Policy began.

The Plaintiff attempts to draw a distinction between the situation in this case and that in Southern Hospitality, pointing out that the hotels in that case "remained open for business at all relevant times," id. at 1138, while the Plaintiff had to close its property for a period of time.  As the Plaintiff asserts, the Southern Hospitality court observed, "On the other hand, courts have found that access was prohibited where the order of civil authority required the insured's premises to close, thereby invoking coverage for business losses." Id. at 1141.  Coverage under the policy in Southern Hospitality, however, was not subject to a waiting period similar to that at issue in this case; thus, had the hotel in that case been forced to close due to the FAA order, the coverage would have applied.  Although the Plaintiff's property in this case did indeed close for a period, it also was open for business during all relevant times, for coverage under the Policy in this case did not begin until seventy-two hours after the start of the action

9

of civil authority that prohibited access to the Plaintiff's property.  By that time, the action of civil authority had been lifted and access no longer was prohibited.

Like the FAA order in <u>Southern Hospitality</u> that stopped airplanes from flying but did not close hotels, the evacuation order for Lead and closure of several area roads, to the extent these occurred after the evacuation order for Deadwood was lifted, limited the ways people could access the Plaintiff's property, but did not close the Plaintiff's property and did not prohibit the public's access thereto.  The action of civil authority occurring after the seventy-two hour period "had only the indirect effect of restricting or hampering access to the business premises." <u>Id.</u> at 1140.  Thus, coverage properly was denied.  The Plaintiff is not entitled to recover under the plain and ordinary meaning of the terms of the Policy.

Furthermore, contrary to the Plaintiff's contention, the words, "No Ded." contained on the declarations page, do not negate the seventy-two hour waiting period.  Nor does this language make the Policy ambiguous when coupled with the seventy-two hour waiting period that the Plaintiff contends *is* a deductible.  The waiting period is not a deductible.  As noted above, a party cannot create an ambiguity merely by offering a different interpretation of contract language.  The term, deductible, is defined as follows: "Under an insurance policy, the portion of the loss to be borne by the insured before the insurer becomes liable for payment." Black's Law Dictionary 422 (7th ed. 1999).  As the Defendant points out, one federal court has observed that "a deductible is an amount that an insurer subtracts from a policy amount, reducing the amount of insurance.  With a deductible, the insurer has the liability and defense risk from the beginning and then deducts the deductible amount from the insured coverage."

In re Sept. 11th Liab. Ins. Coverage Cases, 333 F. Supp. 2d 111, 124 n.7 (S.D.N.Y. 2004) (citing Ostrager & Newman, Handbook on Insurance Coverage Disputes § 13.13[a]).

The Policy in the instant case had no deductible, but defined the time coverage began as seventy-two hours after the action of civil authority that prohibits access to the insured premises. Under the terms of the Policy, no amount was deducted from the Business Income or Extra Expense coverage during the period of time the Defendant agreed to provide coverage. Like a self-insured retention ("SIR"), this seventy-two hour period differs from a deductible. "A SIR differs from a deductible in that a SIR is an amount that an insured retains and covers before insurance coverage begins to apply. Once a SIR is satisfied, the insurer is then liable for amounts exceeding the retention, less any agreed deductible." Id. Had any deductible been applicable under the Policy, such deductible would be withheld after the seventy-two hour waiting period had passed and coverage under the Policy began. The waiting period is conceptually distinct from a deductible and, as such, does not create an ambiguity when read in conjunction with the "No Ded." language on the declarations page. No deductible applies under the terms of the Policy; thus, once coverage begins under the Policy (seventy-two hours after an action of civil authority that prohibits access to the covered premises), the Defendant would have been liable to cover the losses fully, without a deductible amount withheld from the insured coverage.[2]

_____

[2]In its reply brief in support of its motion, the Plaintiff contends the Defendant's argument essentially states that the "No Ded." reference in the declaration sheet has no meaning or effect. The Plaintiff then asks why the "No Ded." provision is there. As far as the Court can ascertain, the Defendant made no such argument that the provision had no meaning or effect. As explained herein, the "No Ded." provision appears to mean there was no deductible, as the plain meaning of that term is generally understood, that would apply once coverage began.

11

## CONCLUSION

No action of civil authority prohibited access to the Plaintiff's premises for the requisite seventy-two hours; thus, coverage under the Policy did not begin. The "No Ded." language on the declarations page did not nullify the seventy-two hour waiting period, nor is there an ambiguity created by inclusion of both the "No Ded." and seventy-two hour waiting period provisions of the Policy. Additionally, no material factual issues preclude summary judgment in this matter. The Plaintiff is not entitled to recover any alleged loss of business income under the Policy. Accordingly, it is hereby

ORDERED that United Fire & Casualty Company's Motion for Summary Judgment [doc. #22] is GRANTED.

IT IS FURTHER ORDERED that BY Development's Motion for Summary Judgment [doc. #25] is DENIED.

Dated this _14th_ day of March, 2006.

BY THE COURT:

ANDREW W. BOGUE
SENIOR DISTRICT JUDGE

12